In re Mark G. BURGHOLZER (fdba Business Funding Group, dba Business Funding Group, Inc., fdba A & M Funding of Western N.Y. LLC), Debtor.

LeChase Data/Telecom Services, LLC, Plaintiff,

v.

Mark G. Burgholzer, Defendant.

Bankruptcy No. 06–20813.
Adversary No. 06–2076.

United States Bankruptcy Court, W.D. New York.

June 5, 2007.

Christopher K. Werner, Boylan, Brown, Code, Vigdor & Wilson LLP, Rochester, NY, for Debtor.

Anthony J. Adams, Jr., Gates & Adams, Rochester, NY, for Plaintiff.

Devin L. Palmer, Boylan, Brown et al, Rochester, NY, for Defendant.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On May 19, 2006, Mark G. Burgholzer (the "Debtor"), filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that he was indebted to LeChase Data/Telecom Services, LLC ("LeChase") in the amount of $751,000.00, the amount due on a March 9, 2006 judgment (the "State Court Judgment"), that the Debtor further indicated was unliquidated and disputed.[1]

On June 30, 2006, LeChase commenced an Adversary Proceeding against the Debtor (the "Dischargeability Proceeding"). The Amended Complaint in the Dischargeability Proceeding asserted that: (1) there was $707,200.87 due on the State Court Judgment, plus interest from March 9, 2006 at the rate of nine percent (9%) per annum; (2) the State Court Judgment had been entered against the Debtor in a "State Court Action" commenced by LeChase, where it was ultimately determined that, in violation of Article 3-A of the New York State Lien Law (the "Lien Law"), he had diverted trust funds in connection with the improvement of real property that had come into his hands as a statutory trustee; and (3) the Debtor's diversion of trust funds in violation of the Lien Law constituted a defalcation while acting in a fiduciary capacity, so that the Court should determine that the amounts due on the State Court Judgment were nondischargeable pursuant to Section 523(a)(4).[2]

The Debtor interposed an Answer to the Amended Complaint which asserted a number of affirmative defenses, including that: (1) LeChase had failed to properly plead intent on the part of the Debtor; (2) LeChase had failed to properly plead that the Debtor's actions were extremely reckless and taken with willful neglect; and (3) the Debtor's actions did not constitute a defalcation.

1. The State Court Judgment was entered in accordance with a February 21, 2006 Decision of the State of New York Court of Appeals (the "Court of Appeals"). Therefore, the State Court Judgment is liquidated and not subject to dispute.

2. Section 523(a)(4) provides that:

(a) A discharge under section 727, 1141, 1328(b) of this title does not discharge an any debt—
(4) for fraud or defalcation while capacity, embezzlement, or larceny[.]
11 U.S.C. § 523 (2007).

On January 17, 2007, LeChase filed an Amended Motion for Summary Judgment (the "Motion for Summary Judgment"), which was opposed by the Debtor.

A summary of the facts presented and decisions made in the State Court Action derived from the decisions[3] of the New York State Supreme Court, Monroe County (the "Trial Court"), Appellate Division Fourth Department (the "Fourth Department") and Court of Appeals in the State Court Action, and the pleadings and proceedings in the Dischargeability Proceeding, is as follows:

1. The Debtor was in the business of factoring client accounts receivable ("Accounts") under the name of Business Funding Group;

2. On January 31, 2000, the Debtor, doing business as Business Funding Group, entered into an Accounts Receivable Purchase Agreement (the "Factoring Agreement") with Lighthouse Communication Design, Inc. ("Lighthouse"). The Agreement indicated that Lighthouse was engaged primarily in the telecommunications design/project management business and contained a representation that at the time of the Debtor's purchase of any Account, Lighthouse would be the lawful owner of the Account, and that it would be free and clear of any liens or encumbrances;

3. In October 1999, Lighthouse had entered into an agreement with MCI Worldcom Network Services, Inc. ("MCI") to design and construct telecommunications networks throughout the United States;

4. On September 15, 2000, after the Factoring Agreement was signed, Lighthouse and LeChase entered into a construction agreement whereby LeChase became a subcontractor of Lighthouse to install several miles of underground and aboveground fiberoptic cable;

5. Pursuant to the Factoring Agreement and notices sent by Lighthouse to MCI, the Debtor received the payments due to Lighthouse from MCI, which, to the extent they were for the cable installation services performed by LeChase, were statutory trust funds under the Lien Law (the "MCI Payments"). The Debtor failed to pay the statutory trust funds over to LeChase, the proper trust fund beneficiary of the trust funds, as required by the Lien Law;

6. On August 8, 2000, when LeChase had not been paid in full for its services as a subcontractor of Lighthouse, it filed notices under the New York State Mechanics Lien Law against Lighthouse;

7. The Trial Court determined that: (a) the Debtor, as the assignee of statutory trust funds from Lighthouse, stood in the same position as Lighthouse for purposes of the provisions of the Lien Law, so that he became a statutory trustee of the funds; (b) the Debtor had failed to file a notice of assignment or a notice of lending, which was permitted under the Lien Law and which would have prevented him from becoming a statutory trustee; (c) the Debtor's repayment of the advances that he made to Lighthouse and other payments to Lighthouse, rather than using the statutory trust funds first to pay the amounts due to proper trust fund beneficiaries, such as LeChase, was a diversion of trust funds under the Lien Law; and (d) LeChase could collect the diverted trust funds from the Debtor unless he could demonstrate that he fell under the exception provided by Section 72(1) of the Lien Law for a

---

**3.** These decisions were made in connection with competing Motions for Summary Judgment in the State Court Action.

purchaser in good faith of the Accounts for value and without notice that a transfer was a diversion of trust assets;

8. Disagreeing with the Debtor's position that notice required actual knowledge or notice, the Trial Court found that the notice requirement was to be determined under the applicable notice provisions of the New York Uniform Commercial Code (the "UCC Standard"). Under that Standard, an individual does not have notice if they did not have actual knowledge, had not received notice, or, from all of the facts and circumstances, did not have reason to know;

9. The Trial Court further found that utilizing the UCC Standard, there was a question of fact as to whether the Debtor could qualify for the good faith purchaser exception;

10. On appeal, the Fourth Department found that the legal standard for determining notice under Section 72(1) of the Lien Law was not the UCC Standard but was one of actual knowledge. It found that the Debtor did not know that: (a) Lighthouse was involved in construction when the Factoring Agreement was signed; and (b) the MCI Payments were in whole or in part statutory trust funds under the Lien Law. Therefore, the Fourth Department granted the Debtor's Motion for Summary Judgment and dismissed the State Court Action;

11. On appeal, the Court of Appeals: (a) indicated it had repeatedly recognized that the primary purpose of the Lien Law was to ensure that those who directly expended labor and materials to improve real

property received payment for the work actually performed; (b) found that the UCC Standard was the proper legal standard for determining notice for purposes of Section 72(1) of the Lien Law; (c) found that the Debtor did not qualify for the good faith purchaser exception, because, utilizing the UCC Standard of notice, it determined that, "LeChase maintains that Business Funding has failed to raise a triable issue of fact regarding its notice of the trust and the diversion, and we agree. Burgholzer knew or should have known that Business Funding was receiving payments from Worldcom for construction of improvements to real property.";[4] and (d) directed that LeChase's Motion for Summary Judgment be granted, which ultimately resulted in the entry of the State Court Judgment.

### DISCUSSION

The arguments of the parties on dischargeability are relatively simple and straightforward. In some ways it is a continuation of the same argument that they had about notice in the State Court Action. There, it was whether notice required actual knowledge, or something less. Here, it is about whether defalcation in Section 523(a)(4) requires actual knowledge that one is a fiduciary and is dealing with trust funds, or something less.

LeChase argues that: (1) Bankruptcy Courts in New York in connection with the Lien Law, and bankruptcy courts in districts where the state has a similar lien law regarding improvements to real property, have routinely found that contractors and subcontractors who diverted statutory

---

**4.** At oral argument, the parties acknowledged that if this Court were to find that actual knowledge and intent were required for a finding of defalcation under Section 523(a)(4), since LeChase prosecuted the State Court Action by Motion for Summary Judgment asserting that the UCC Standard was the proper notice standard, and the Court of Appeals agreed, so that it was not required to find actual knowledge, LeChase would be entitled to discovery and the opportunity to prove that the Debtor did have actual knowledge that the Accounts were in whole or in part statutory trust funds.

trust funds had committed a defalcation while acting in a fiduciary capacity, and found their debts nondischargeable under Section 523(a)(4), even if the offending contractor or subcontractor had no actual knowledge of the applicable lien law and its requirements;[5] (2) it was determined in the State Court Action that the Debtor was a trustee under the Lien Law who had diverted statutory trust funds, and the Court of Appeals found that he knew or should have known that all or a portion of the MCI Payments were statutory trust funds; and (3) Section 523(a)(4) does not require that a Lien Law trustee who has diverted trust funds be found to have diverted those trust funds knowingly or intentionally to be found to have committed a defalcation.

The Debtor argues that: (1) Section 523(a)(4) requires that: (a) the Debtor have actual knowledge both that he is a fiduciary and that funds he is dealing with are trust funds; and (b) he intentionally breaches his fiduciary duties in connection with his use of those funds, or at least does so with extreme recklessness or willful neglect; (2) although a mistake of law or ignorance of the law is not a defense to a claim of defalcation under Section 523(a)(4), a mistake of fact, such as in the Debtor's case where he did not have actual knowledge that he was a fiduciary or that the MCI Payments were statutory trust funds, is a defense to a finding of defalcation; and (3) although the United States Court of Appeals for the Second Circuit has not answered the question of whether intent or some degree of knowing culpability is required for there to be a finding of

defalcation under Section 523(a)(4), a number of other Circuits have determined that some degree of knowing culpability, more than a mere inability to properly account for trust funds under a fiduciary's control, is required for there to be a defalcation.

I agree with LeChase that the debt evidenced by the State Court Judgment is nondischargeable because it was a debt for diverting trust funds by the Debtor as a statutory trustee under the Lien Law, which constitutes a defalcation while acting in a fiduciary capacity for purposes of Section 523(a)(4), for the following reasons:

1. Bankruptcy Courts in New York State and other states with laws similar to the Lien Law, routinely make determinations of nondischargeability under Section 523(a)(4) when contractors and subcontractors cannot fully account for trust funds that have come into their possession in connection with a specific improvement, by demonstrating that all of those trust funds were paid to proper trust fund beneficiaries on that improvement, or that all proper trust fund beneficiaries were paid in full in connection with the particular improvement;

2. Bankruptcy Courts make these determinations notwithstanding that a debtor contractor or subcontractor asserts that they were unaware of the provisions of the applicable lien law, finding that ignorance of the law is not a defense;[6]

3. The Debtor is a sophisticated factor who acknowledged that he was fully familiar with the Lien Law and had factored contractor accounts receivable for other

---

**5.** At oral argument, the parties agreed that ignorance of the Lien Law and its provisions and duties was not a defense either in State Court or under Section 523(a)(4).

**6.** As a result, a recent high school graduate debtor who did roofing for a roofing contractor as a summer job and decides after gradua-

tion to do roofing on his own, but knows nothing of the Lien Law, would have his unpaid debt to a building supply company determined to be nondischargeable if he paid any of the funds to other than trust fund beneficiaries.

clients and filed proper notices of lending so that he would not be a Lien Law trustee. The Court of Appeals determined that he knew or should have known that the MCI Payments were in whole or in part contractor receivables and therefore statutory trust funds under the Lien Law. The determination of the Court of the Appeals that the Debtor "should have known" is significant, since under the UCC Standard it adopted, it only needed to determine that from all of the facts and circumstances the Debtor had reason to know;

4. Unlike the fact situations in the various cases cited by the Debtor for the proposition that, since there is an ever-developing body of law on: (a) who is a fiduciary; and (b) what constitutes a breach of emerging fiduciary duties, something more than a mere failure to properly account for trust funds is required for there to be a defalcation, the duty of a trustee under the Lien Law with respect to trust funds is very clear and simple. The trust funds are to be paid over to proper trust fund beneficiaries on a particular improvement until all proper trust fund beneficiaries are paid in full;

5. On the facts and circumstances presented, as determined by the Trial Court and Court of Appeals in the State Court Action, there has been a diversion of statutory trust funds by a trustee, in this case the Debtor, which meets the basic definition of a defalcation as set forth in the Decision of the United States Court of Appeals for the Second Circuit in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937) *("Central Hanover")*, that defalcation may be established even though a debtor's failure to account for money he received while acting in a fiduciary capacity was through ignorance or negligence. Although this language in the Decision has been addressed and criticized by a number of courts, the District Court for the Western District of New York in *In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977), in a Section 17(a)(4) case under the Bankruptcy Act dealing with a diversion of trust funds by a contractor under the Lien Law, citing *Central Hanover*, stated that, "Defalcation has been interpreted by the Second Circuit to include innocent defaults." *Id.* at 418.;

6. This Court rejects the Debtor's assertion that, because there was a "mistake of fact" as to the nature of the MCI Payments, there can be no finding of a defalcation. Although a true mistake of fact under some facts and circumstances may preclude a finding of a defalcation, here, where the Court of Appeals found that the Debtor knew or should have known that the Accounts were statutory trust funds, there is not a "mistake of fact." The Debtor is charged with the facts he knew or should have known; and

7. As expressed by the Court of Appeals in the State Court Action, the purpose of the Lien Law is to ensure that proper trust fund beneficiaries are paid by trustees who have trust funds under their possession and control. Although one of the fundamental policies of the Bankruptcy Code is the fresh start policy, Section 523 sets forth a number of exceptions to discharge which balance that fresh start policy against protecting certain holders of debts such as trust fund beneficiaries who have been harmed because of a defalcation by a fiduciary. Although in this case the trust fund beneficiary, LeChase, is a major corporation, Bankruptcy Courts deal every day with trust fund beneficiaries who are small companies or individual contractors who can be put out of business as the result of diversions of trust funds. Balancing the right to payment of the trust fund beneficiary under the Lien Law against the fresh start of this Debtor, a

sophisticated factor who failed to stay fully informed about his client's business dealings and to reasonably police his collateral, when the Court of Appeals has determined, from everything he had in his possession, he should have known that he was dealing with Lien Law trust funds, this Court finds the balance to be in favor of the trust fund beneficiary.

## CONCLUSION

The debt evidenced by the State Court Judgment is determined to be nondischargeable.

**IT IS SO ORDERED.**